IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DAVID S. LAGNER, | : | CIVIL ACTION |
| Claimant, | : | |
| v. | : | |
| MICHAEL J. ASTRUE, | : | No. 11-4628 |
| Commissioner of Social Security, | : | |
| Defendant. | : | |

**MEMORANDUM ON REQUEST FOR REVIEW**

**Baylson, J.**                                                                                                   **November 5, 2012**

      Claimant David S. Lagner seeks judicial review of a decision by the Commissioner (the "Commissioner") of the Social Security Administration (the "SSA") denying his application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("the Act"), 42 U.S.C. §§ 401-33.  After careful consideration of all the relevant facts and circumstances, and for the reasons explained below, Lagner's request for review of the May 25, 2011 decision of the Appeals Council is DENIED and his Complaint is DISMISSED with prejudice.

**I.     Factual and Procedural Background**

      On April 23, 2009, Lagner filed an application for DIB, alleging disability beginning on December 1, 2007 due to depression, anxiety, stress, insomnia, panic attacks, loss of appetite, and failure to concentrate.  (Tr. 165-66, 188.)  On September 2, 2009, the SSA denied his application.  (Id. at 79-84.)  Subsequently, on September 28, 2009, Lagner filed a written request for an administrative hearing regarding his application.  (Id. at 86.)  A hearing originally

1

scheduled for December 2, 2009 was postponed to allow Lagner an opportunity to seek legal represenation. (Id. at 27.) After Lagner had retained counsel, a hearing was held before Administrative Law Judge ("ALJ") Eric Schwarz in Philadelphia, Pennsylvania on February 8, 2010. (Id.) At the hearing, Lagner appeared and testified on his own behalf. A vocational expert ("VE") also appeared at the hearing and testified. (Id.)

On April 9, 2010, the ALJ issued an unfavorable decision regarding Lagner's application. (Id. at 36.) The ALJ determined that Lagner suffers from severe impairments of cervical radiculopathy, hisotry of alcohol abuse, depression, anxiety, and a panic disorder. (Id. at 29.) However, the ALJ determined that Lagner does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Id.) The ALJ also determined that Lagner has the residual functional capacity (the "RFC") to perform "light work," as that term is defined in 20 C.F.R. § 416.967(b), except that he is capable of performing "no more than simple, unskilled tasks" and that his "work goals can be made up by the end of the work shift or the workday to accommodate brief periods of inattention." (Id. at 31.) Finally, the ALJ determined that, although Lagner is unable to perform any past relevant work, he can perform jobs that exist in significant numbers in the national economy, considering his age, education, work experience, and RFC. (Id. at 35-36.) Accordingly, the ALJ concluded that Lagner was not disabled under the Act. (Id. at 36.)

On April 16, 2010, Lagner sought review of the ALJ's decision by the Appeals Council. (Id. at 21-22.) On March 1, 2011, the Appeals Council notified Lagner that it had granted his request for review and proposed to issue a partially favorable decision finding him disabled as of April 4, 2010, but not before that date. (Id. at 161-64.) The Appeals Council also informed

Lagner that it would consider any comments or new evidence submitted by him within thirty days from the date of the notice. (Id. at 162.) The Appeals Council specifically noted that any new evidence submitted should pertain to Lagner's alleged disability prior to April 4, 2010, the date the Appeals Council intended to find him disabled. (Id.) In response to the Appeal's Council's proposed action, Lagner submitted a letter, dated January 28, 2011 from one Robin Schor, M.D., Lagner's treating psychiatrist, along with a supporting brief. (Id. at 268-69, 558.)

On May 25, 2011, the Appeals Council issued a partially favorable decision finding Lagner disabled as of April 4, 2010, but not before that date.[1] The Appeals Council concurred with and adopted the ALJ's determination that Lagner does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Id. at 5.) Additionally, the Appeals Council concurred with and adopted the ALJ's determinations that Lagner is limited to unskilled light work and is unable to perform any past relevant work. (Id.)

However, the Appeals Council disagreed with the ALJ's treatment of Lagner's ability to work.  Applying the age categories set forth in 20 C.F.R. § 404.1563, the Appeals Council determined that Lagner could perform jobs that existed in significant numbers in the national economy, considering his age, education, work experience, and RFC, but only from December 1, 2007, the alleged onset date, through April 3, 2010. (Id.) On April 4, 2010, the day before Lagner turned 55 years old, he moved into the "advanced age" category pursuant to 20 C.F.R. § 404.1563(e). (Id.) Taking into account Lagner's vocational background and his RFC for

---

[1]The Appeals Council initially issued its decision on April 12, 2011, but vacated that decision in its May 25, 2011 decision to consider the additional evidence that Lagner had submitted in support of his request for review. (See Tr. 11-13.)

unskilled work, the Appeals Council determined that medical-vocational Rule 202.06 in Appendix 2 to Subpart P of Regulations No. 4 directed a conclusion that he is disabled under the Act. (Id.) Accordingly, the Appeals Council concluded that Lagner was disabled as of April 4, 2010, but not before that date. (Id. at 6.)

The Appeals Council's May 25, 2011 decision stands as the final decision of the Commissioner. See Sims v. Apfel, 530 U.S. 103, 106-07 (2000). On July 28, 2011, Lagner filed a Complaint in this Court, requesting review of the Commissioner's decision. (ECF No. 3.) On May 18, 2012, Lagner filed a Motion for Summary Judgment, or in the Alternative, a Motion for Remand, accompanied by a Brief and Statement of the Issues in Support of Request for Review. (ECF No. 14.) On June 7, 2012, the Commissioner filed a Response in opposition thereto (ECF no. 15), and on June 14, 2012, Lagner filed a Reply (ECF No. 16).

**II.     Legal Standards**

    **A.     Jurisdiction**

The Social Security Act provides for judicial review by this Court of any "final decision of the Commissioner of Social Security" in a disability proceeding. 42 U.S.C. §§ 405(g), 1383(c)(3). A district court may enter a judgment "affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." Id.

    **B.     Standard of Review**

On judicial review of the Commissioner's decision, the Commissioner's findings of fact, "if supported by substantial evidence," are conclusive. Id. Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Smith v.

Comm'r of Soc. Sec., 631 F.3d 632, 633 (3d Cir. 2010) (internal quotation marks omitted). It is a standard requiring "less than a preponderance of the evidence but more than a mere scintilla." Jones v. Barnhart, 364 F.3d 501, 503 (3d Cir. 2004).

In reviewing the record for substantial evidence, however, the Court must "not weigh the evidence or substitute [its own] conclusions for those of the fact finder." Rutherford v. Barnhart, 399 F.3d 546, 552 (3d Cir. 2005) (internal quotation marks omitted).

The Court's review of the legal standards applied by the ALJ is plenary. See Allen v. Barnhart, 417 F.3d 396, 398 (3d Cir. 2005).

### C.     Disability Claims Analysis

The Social Security Act defines disability as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner has promulgated regulations requiring a five-step sequential analysis to determine the eligibility of claimants for benefits. First, if the claimant is engaged in substantial gainful activity, the claim is denied. 20 C.F.R. §§ 404.1520(b), 416.920(b). Second, if the claimant is not suffering from a severe impairment or combination of impairments that significantly limits physical or mental ability to do basic work activities, the claim is denied. 20 C.F.R. §§ 404.1520(c), 416.920(c). Third, if the claimant is suffering from severe impairments that meet or equal the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, the claim is approved. 20 C.F.R. §§ 404.1520(d), 416.920(d). Fourth, if the claim is not approved under Step 3, the claim will be denied if the claimant retains the RFC to meet the

physical and mental demands of his past relevant work. 20 C.F.R. §§ 404.1520(e)-(f), 416.920(e)-(f). Fifth, if the claimant does not retain the RFC to perform past relevant work and there is no other work in the national economy that the claimant can perform (considering his RFC, age, education, and past relevant work experience), the claim is approved. 20 C.F.R. §§ 404.1520(g), 416.920(g).

### III.   Discussion

Lagner makes two principal contentions in support of his request for review. The Court will consider each of these contentions in turn.

#### A.   The Appeals Council Did Not Err in Applying the Age Categories

Initially, Lagner contends that the Appeals Council erred by failing to properly apply the age categories set forth in 20 C.F.R. § 404.1563 in determining his ability to adjust to work in the national economy. Specifically, Lagner contends that the Appeals Council failed to conduct a "borderline" age analysis, as required by 20 C.F.R. § 404.1563(b), because he was within a few days of reaching an older age category at the time the ALJ's decision was issued.

The SSA has promulgated medical-vocational guidelines that "direct that certain impairments are so severe that claimants who suffer from them are considered disabled." Kane v. Heckler, 776 F.2d 1130, 1132 (3d Cir. 1985) (citing 20 C.F.R., Pt. 404, Subpt. P, App. 1). If these requirements are not met, the SSA must apply the rules set forth in Appendix 2 of the guidelines, known as "the Grids," which "take into consideration the claimant's physical abilities, age, education, and work experience, and direct a finding of disability or lack of disability depending on the combination of these factors." Id. "Where an individual's circumstances are not adequately described by the Grids' attributes of [RFC], age, education, and skills, the SSA

must decide the case 'on the basis of the principles and definitions in the regulations, giving consideration to the rules for specific case situations in [the Grids].'" Lucas v. Barnhart, 184 F. App'x 204, 206 (3d Cir. 2006) (quoting 20 C.F.R. Pt. 404, App. 2 § 200.00(d)).

The Grids rely on the age categories set forth in 20 C.F.R. § 404.1563. That regulation provides that individuals under 50 are considered to be "younger" persons whose age generally does not seriously affect their ability to adjust to other work, while individuals between the ages of 50 and 54 are considered to be "closely approaching advanced age," such that age along with a severe impairment or impairments and limited work experience may affect their ability to adjust to other work. Id. § 404.1563(c)-(d). The regulation also provides that individuals 55 or older are considered to be persons "of advanced age" whose age significantly affects their ability to adjust to other work. Id. § 404.1563(d).

Notwithstanding these seemingly rigid categories, 20 C.F.R. § 404.1563(b) provides that if claimants are "within a few days to a few months of reaching an older age category, and using the older age category would result in a determination or decision that [they] are disabled, [SSA] will consider whether to use the older age category after evaluating the overall impact of all the factors of [the] case." Lucas, 184 F. App'x at 206 (alterations in original) (quoting 20 C.F.R. § 404.1563(d)). In these so-called "borderline" cases, "the SSA cannot mechanically apply the Grids' age categories, but must 'give full consideration to all relevant facts. . . .'" Id. (quoting Kane, 776 F.2d at 1134).

Pursuant to these rules, the SSA is thus required to answer two closely related questions. Id. at 207. First, it must determine whether a claimant is "within a few days to a few months of reaching an older age category" under 20 C.F.R. § 404.1563(b). Id. And second, if the SSA

finds that the claimant is a borderline case, it must determine whether his ability to adjust was more like that of an individual within his age category or an individual within the older age category.  Id.

In this case, Lagner's 55th birthday was on April 5, 2010, a few days before the ALJ issued an unfavorable decision denying his application for DIB on April 9, 2010.  (Tr. 35.)  The Appeals Council, however, determined that the ALJ had failed to apply the proper medical-vocational rule in finding Lagner not disabled.  (Id. at 162.)  Recognizing that Lagner had moved into the "advanced age" category pursuant to 20 C.F.R. § 404.1563(e) on April 4, 2010, the day before his actual birthday, and taking into account his vocational background and his RFC for unskilled work, the Appeals Council determined that the applicable medical-vocational rule – Rule 202.06 in Appendix 2 to Subpart P of Regulations No. 4 – directed a conclusion that he is disabled under the Act.  (Tr. 5.)  Accordingly, the Appeals Council concluded that Lagner was disabled as of April 4, 2010, but not before that date.  (Id. at 5-6.)

For several reasons, the Court rejects Lagner's contention that the Appeals Council erred in applying the age categories.  As an initial matter, Lagner fails to specify when exactly prior to his 55th birthday he should be considered an individual of advanced age entitled to DIB, and why.  Instead, he merely contends, in general terms, that the case be remanded for the SSA to conduct a borderline age analysis.  According to Lagner, "[i]f the Commissioner on remand applies the borderline age analysis and determines that . . . [he was not] disabled prior to his 55th birthday, so be it." (Lagner Reply, ECF No. 16, at 2.)  Thus, the Court – and presumably the SSA, if remand were ordered – is left to guess the duration of time prior to Lagner's 55th

birthday for which he is seeking disability benefits as a borderline case under the advanced age category.

To the extent Lagner contends that he should be treated as an individual of advanced age beginning on December 1, 2007, the alleged onset date in his application for DIB (Tr. 165), that contention must be rejected. The alleged onset date was over two years prior to the date of the ALJ's decision. That is not within a borderline period, or in other words, "within a few days to a few months of reaching an older age category." 20 C.F.R. § 404.1563(b). To be sure, the Third Circuit has never found it appropriate to extend the borderline age analysis that far in advance of a claimant's relevant birthday. Compare Lucas, 184 F. App'x at 208 (suggesting that 106 days prior to relevant birthday is "within a few months"), and Kane, 776 F.2d at 1132 (suggesting that 48 days prior to relevant birthday is "within a few months"), with Roberts v. Barnhart, 139 F. App'x 418, 420 (3d Cir. 2005) (finding no authority to support extending borderline age determinations to claimants five to six months away from their relevant birthdays). To do so would undercut the very purpose of the age categories and the borderline age regulation itself.

Moroever, not only did the Appeals Council consider using the advanced age category, it applied the advanced age category to find Lagner disabled in accordance with medical-vocational Rule 202.06 as of the day before his actual birthday (Tr. 5, 162.) Lagner points to no evidence in the record that would justify a further adjustment of the Appeals Council's disability finding. In fact, when the Appeals Council notified Lagner that it had granted his request for review and proposed to issue a partially favorable decision finding him disabled as of April 4, 2010, but not before that date, it informed him that he could submit any comments or new evidence within thirty days from the date of the notice, and specifically noted that any new

evidence submitted should pertain to his alleged disability prior to April 4, 2010. (Id. at 162.) In response to the Appeal's Council's proposed action, Lagner submitted a letter from Dr. Schor, his treating psychiatrist, along with a supporting brief. (Id. at 268-69, 558.) In that letter, Dr. Schor explained that he has seen Lagner monthly since October 1, 2008, and that although Lagner's condition appeared to stabilize over the last year, it appeared to regress over the last few months. (Id. at 558.) Ultimately, Dr. Schor concluded that, in his current condition, Lagner is unable to work at the present time. (Id.)

In its decision, the Appeals Council explicitly stated that it did not accord Dr. Schor's letter significant weight for the period prior to April 4, 2010, the established onset date of disability, because Dr. Schor merely concluded that Lagner is currently unable to work. (Id. at 6.) Indeed, as the Appeals Council recognized, Dr. Schor did not state that Lagner had been unable to work prior to that time. (Id. at 558.) As discussed more fully below, the record adequately supports the determination by the Appeals Council to discount Dr. Schor's conclusion.

Finally, at least two courts within the Third Circuit have approved of disability findings by the Appeals Council in virtually the exact same circumstances as this case. See Kumanchik v. Astrue, No. 11-cv-141, 2012 WL 875448, at *2 (W.D. Pa. Mar. 14, 2012); Williams v. Comm'r of Soc. Sec., No. 07-cv-3234, 2008 WL 5075549, at *11 (D.N.J. Nov. 25, 2008). In both Kumanchik and Williams, as in this case, the claimant had attained an age that moved him into an older age category prior to the issuance of the ALJ's decision. In both Kumanchik and Williams, as in this case, the ALJ erred in failing to apply the relevant medical-vocational rule that directed a finding of disability. And in both Kumanchik and Williams, as in this case, the

Appeals Council corrected the ALJ's error by applying the proper medical-vocational rule and found the claimant disabled as of his relevant birthday, but not before that date. Lagner cites no case in which a court has remanded a decision by the Appeals Council after it had corrected an error in an ALJ's application of the medical-vocational rules to find a claimant disabled as of his relevant birthday – as the Appeals Council did in Kumanchik, in Williams, and in this case.

Accordingly, because the Appeals Council did not err in applying the age categories, remand is not warranted to determine whether its disability determination should be further adjusted.

**B.     The ALJ Did Not Err by Failing to Elicit Testimony from the VE About the Impact of Stress on His Ability to Work**

Next, Lagner contends that the ALJ erred by failing to adequately evaluate his claims of stress in assessing his ability to work. In particular, Lagner contends that the ALJ was required to elicit testimony from the VE about the impact of stress on his ability to perform work in the national economy, but failed to do so.

When a VE testifies before an ALJ, only those limitations that the ALJ finds to be supported by the record must be included in a hypothetical to the VE. Rutherford v. Barnhart, 399 F.3d 546, 554 (3d Cir. 2005); Plummer v. Apfel, 186 F.3d 422, 431 (3d Cir. 1999). The ALJ is "not require[d] . . . to submit to the [VE] every impairment alleged by a claimant. Rutherford, 399 F.3d at 554 (emphasis in original). Rather, the ALJ "must accurately convey to the vocational expert all of a claimant's credibly established limitations." Id. (emphasis in original).

In this case, both the ALJ and the Appeals Council considered the alleged limitations

caused by stress on Lagner's ability to work and determined that they were not credible.[2]  In support of his contention that stress prevents him from working, Lagner principally relies on two medical source statements completed on June 24, 2009 and January 28, 2010, in which Dr. Schor – Lagner's treating psychiatrist – concluded that he is incapable of handling even low-stress jobs.[3]  (Tr. 372, 494.)  The ALJ considered both these medical source statements, and ultimately found that they were entitled to little weight (id. at 34) – a determination with which the Appeals Council agreed (id. at 6.).

In addition, as noted above, the Appeals Council considered a letter from Dr. Schor, dated January 28, 2011, in which he concluded that Lagner is unable to work at the present time, along with an accompanying brief contending that Dr. Schor's letter further clarifies and supports Dr. Schor's prior medical source statements.  (Id. at 268, 558.)  The Appeals Council ultimately determined that neither those statements nor Dr. Schor's letter of January 28, 2011 were entitled to significant weight for the period prior to April 4, 2010 – the date on which Lagner's established disability commenced.  (Id. at 6.)

---

[2] Though the Appeals Council's May 25, 2011 decision stands as the final decision of the Commissioner, it relies on several determinations made by the ALJ relevant to the instant analysis.  Therefore, the Court will consider determinations made by both the Appeals Council as well as the ALJ in its analysis.

[3] Lagner also cites other evidence in the record in further support of his contention.  (See Tr. 358, 369, 418, 420, 447, 488, 514.)  None of this evidence, however, addresses the impact of stress on his ability to work; it merely suggests that he suffers from and was treated for stress.  Therefore, this evidence adds nothing to the conclusions reached by Dr. Schor in the medical source statements that both the ALJ and Appeals Council considered and rejected.

Generally, "[t]reating physicians' reports should be accorded great weight." Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir.1999).[4] "An ALJ may reject a treating physician's opinion outright only on the basis of contradictory medical evidence, but may afford a treating physician's opinion more or less weight depending upon the extent to which supporting explanations are provided." Id. "The ALJ must consider all the evidence and give some reason for discounting the evidence she rejects." Diaz v. Comm'r of Soc. Sec., 577 F.3d 500, 505-06 (3d Cir. 2009) (quoting Plummer, 186 F.3d at 429).

Here, the ALJ enumerated specific reasons for discounting both medical source statements by Dr. Schor regarding Lagner's alleged limitations due to stress. (Tr. 34.) Among other things, the ALJ explained that the statements were "inconsistent with the three treatment plans . . . by the same psychiatrist," and that Lagner "engages in too many activities that require a schedule to be met (acting, baseball league, etc.) to be capable of simple, unskilled tasks." (Id.)

The Appeals Council concurred with and explicitly adopted these reasons for discounting Dr. Schor's medical source statements.[5] (Id. at 6.) Moreover, the Appeals Council explicitly

---

[4]A treating physician's opinion is accorded controlling weight only if the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence [in the] case record." Smith v. Astrue, 359 F. App'x 313, 316 (3d Cir.2009) (quoting 20 C.F.R. §§ 404.1527(d)(2)) (alteration in original). Here, Lagner does not contend that Dr. Schor's opinion is entitled to controlling weight.

[5]The ALJ also gave Dr. Schor's medical source statements little weight on the ground that "[m]edication seems to work well to control [Lagner's] symptoms." (Tr. 34.) However, the Appeals Council did not explicitly adopt this reason as a basis for discounting Dr. Schor's medical source statements, as it did with respect to the other two reasons provided by the ALJ. The Court sees no need to address whether the record supports the proposition that medication seemed to control Lagner's symptoms, given that the other two reasons provided by the ALJ – and adopted by the Appeals Council – are sufficient to uphold the decision to discount Dr. Schor's medical source statements.

stated that it did not accord Dr. Schor's letter of January 28, 2011 significant weight for the period prior to April 4, 2010, the established onset date of disability, because Dr. Schor merely concluded that Lagner is currently unable to work, and did not state that he had been unable to work prior to that time. (Id.)

The reasons provided by the ALJ and the Appeals Council for discounting the opinions of Dr. Schor are adequately supported by the record. Indeed, as the record demonstrates, Dr. Schor's own treatment plans specified Global Assessment Functioning ("GAF") scores between 60 and 70, a range which is generally indicative of only mild symptoms or impairments in functioning.[6] (Tr. 497-504, 512.) Thus, because Dr. Schor's own treatment plans contradict the extreme limitations specified in his two medical source statements, the ALJ and the Appeals Council were entitled to reject them. See Grogan v. Comm'r of Soc. Sec., 459 F. App'x 132, 137-38 (3d Cir. 2012) (holding that ALJ's decision to reject opinion of treating physician was proper where physician's own treatment records did not support her opinion and the record contained medical evidence contrary to her opinion).

Moreover, the record indicates that Lagner engaged in a number of activities that undercut the contention that he was unable to perform even low-stress jobs prior to April 4, 2010. To be sure, Lagner reported in a Function Report Form, dated June 3, 2009, and again at the February 8, 2010 hearing, that he could perform numerous activities of daily living, including

---

[6]GAF scores are used by "mental health clinicians and doctors to rate the social, occupational, and psychological functioning of adults." Irizarry v. Barnhart, 233 F. App'x 189, 190 n.1 (3d Cir. 2007). A GAF score between 61 and 70 indicates "[s]ome mild symptoms . . . [or] some difficulty in social, occupational, or school functioning . . . , but generally functioning pretty well, has some meaningful interpersonal relationships." DSM-IV-TR 34. A GAF score between 51 and 60 indicates "[m]oderate symptoms . . . [or] moderate difficulty in social, occupational, or school functioning." Id.

doing laundry, vacuuming, walking and caring for his dog, checking email, driving, preparing meals, and shopping for food. (Tr. 216-21, 49-51.) More importantly, Lagner testified at the hearing that he had repeatedly performed more socially and physically intensive activities during the relevant time period, including playing in an over-40 baseball league as a first baseman in the prior season (id. at 44-45), working part-time as an actor (he stated that he had two acting jobs in the first two months of 2010 and less than ten in 2009, which generally required him to be on set eight to ten hours a day) (id. at 45-48), and working self-employed as an insurance salesman, communicating with clients and handling their claims (id. at 45, 50-51). Therefore, the determination by the ALJ and the Appeals Council that evidence of Lagner's activities undermined Dr. Schor's medical source statements was proper. See Russo v. Astrue, 421 F. App'x 184, 191 (3d Cir. 2011) (recognizing that evidence of claimant's daily activities, including driving, going to the gym, grocery shopping, doing chores, and babysitting her nieces, among other things, undermined treating physician's conclusion that claimant was disabled).

      Finally, the record supports the Appeals Council's decision to give little weight to Dr. Schor's letter of January 28, 2011 on the basis that it did not address the relevant period of alleged disability. As discussed above, when the Appeals Council notified Lagner that it had granted his request for review and proposed to issue a partially favorable decision finding him disabled as of April 4, 2010, but not before that date, it informed him that he could submit any comments or new evidence within thirty days from the date of the notice, and specifically noted that any new evidence submitted should pertain to his alleged disability prior to April 4, 2010. (Tr. 162.) In response to the Appeal's Council's proposed action, Lagner submitted Dr. Schor's

letter, which merely concluded that Lagner is currently unable to work. (Id. at 558.) It did not state that Lagner had been unable to work prior to that time. (Id.)

Accordingly, the Court concludes that the reasons provided by the ALJ and the Appeals Council for discounting Dr. Schor's opinions concerning the impact of stress on Lagner's ability to work are supported by substantial evidence. Therefore, because Lagner's alleged inability to work as a result of stress was not a credibly established limitation, the ALJ did not err by failing to elicit testimony from the VE about the impact of stress on his ability to perform work in the national economy.

**IV.     Conclusion**

For the foregoing reasons, and after careful consideration of all of the parties' arguments, Lagner's request for review is DENIED and his Complaint is DISMISSED with prejudice.

An appropriate Order follows.

O:\CIVIL 11\11-4628 Lagner v SS\Memo re Request for Review.wpd